THOMAS A. MATHIS, RELATOR, v. WILLARD P. VOORHEES.

Argued February 1, 1911—Decided February 9, 1911.

A recount of a part of the votes cast at an election for state senator in the county of Ocean was ordered by a justice of the Supreme Court who was present during the counting of the ballots by the county board of elections by which it appeared that an error had been made sufficient to change the result of such election, whereupon the relator moved the said justice to revoke the certificate of election already issued and to issue in its place a certificate in favor of the relator, as the party found to have received a majority of the votes cast at such election, which the said justice refused to do upon the ground that the ballots so counted in his presence were not the votes cast at such election. Upon an application for a writ of *mandamus* compelling the said justice to make such orders—*Held*, that for the reasons stated in the opinion, the application should be denied.

On rule to show cause.

This is an application for a *mandamus* compelling Willard P. Voorhees, a justice of the Supreme Court, who had ordered a recount of the votes cast at an election, to revoke the

certificate of election that had been issued to George C. Low as state senator for Ocean county, and to issue in its place a certificate to the relator, Thomas A. Mathis, as the party found to have received a majority of the votes cast at the election for said office.

From the written statement made by Mr. Justice Voorhees of the reasons for his refusal to make such orders the following excerpts are pertinent to the present application:

"At the general election held on November 8th, 1910, in the county of Ocean, George C. Low was the regularly nominated Democratic candidate for state senator, and Thomas A. Mathis the regularly nominated Republican candidate for that office.

"Within the time limited by the Election act after such election, a petition was presented to me by Mathis, who had, according to the canvass and statements of the result of the election made by the boards of registry and election of said county, failed of election.

"This petition set forth that such returns showed that throughout the entire county George C. Low had received 2,572 votes, and Thomas A. Mathis 2,491 votes for the office of state senator, resulting upon the face of such returns in the election of George C. Low by a majority of 81 votes.

"The petition further alleged the belief of the petitioner, upon credible information, that errors had been made by the election boards for the First and Second Districts of Lakewood township, and for the township of Dover, in counting the ballots cast at said election.

"The petition then prayed for a recount of the ballots cast in the three above-mentioned election districts. An order was made as prayed for, and the recount has been held. At it, the First District of Lakewood was first counted and the township of Dover secondly counted. The result at the termination of the examination of these two districts was practically unchanged, being a net loss of but one vote for Low.

"The Second District of Lakewood was lastly taken up.

"The statement of the result of the election for senator in this district gave Low.................... 260 votes.
"Gave Mathis ........................ 214   "

"Low's majority ................. 46
"The whole number of votes on the poll list...... 487
"Rejected ballots ............................ 10

477

"Upon opening the box it was found that the ballots were upon two strings, the first string contained ballots numbered from one to three hundred consecutively; the second string from three hundred and one to four hundred and eighty-seven consecutively. The first two hundred ballots showed that there was a difference of but five votes between the senatorial candidates; of the third hundred, Low received 23 and Mathis 66. The first one hundred votes of the second string gave Low 53 votes and Mathis 36, a difference of 17, while of the last 87 votes of the string, only 15 votes were counted for Low and 65 for Mathis. The apparent discrepancies in totals arise from rejected ballots and those otherwise not counted, but not varying the majorities more than three or four votes. The ballots last strung were mostly straight tickets without change by writing or paster, clean and folded alike. The two tally sheets, which agree with each other, show 100 straight Democratic tickets and sixty-two straight Republican tickets.

"From the contents of the box, the bunching of the Republican votes upon the latter part of each string, from the tally sheets, from the appearance of the ballots lastly strung upon each string, I am satisfied that the ballots counted under judicial direction were not the identical ballots cast at the election.

"I shall, therefore, withhold the certificate, on the ground that the votes counted under my order are not the votes cast at the election."

The statutory provision under which this application is

made, is contained in section 159 of the Election law as amended (*Pamph. L.* 1909, *p.* 41), viz.:

"That if it shall appear upon such recount that an error has been made sufficient to change the result of such election, then such justice shall revoke the certificate of election already issued to any person, and shall issue in its place another certificate in favor of the party who shall be found to have received a majority of the votes cast at such election."

Before Justices GARRISON, SWAYZE and VOORHEES.

For the relator, *Gilbert Collins* and *Edwin G. C. Bleakly.*

For George C. Low, *William D. Edwards, Isaac W. Carmichael* and *Richard V. Lindabury.*

The opinion of the court was delivered by

GARRISON, J. The essential function of the writ of *mandamus* is to incite to official action. It is not the appropriate writ upon which to review official action already taken or by which to dictate in advance what such action shall be excepting in cases where the act to be performed is so purely ministerial in character or its performance in any event so specifically prescribed that the only action contemplated is that of blind obedience.

Our cases of *Kirchgessner* v. *Board of Health,* 24 *Vroom* 594, and *Mooney* v. *Edwards,* 22 *Id.* 479, place the province of the writ in each of these respects upon its proper footing and show that in the one class of cases *mandamus* will not weigh the merits of official action that has already been taken, and that in the other it will arouse but will not direct official action, *i. e.,* it will start the pendulum going but will not set the hands.

The present case is within the former rather than the latter of these classes. The carefully-prepared statement of Mr. Justice Voorhees, which culminates in his refusal to

make the orders demanded by the relator, completely negatives the notion of official inertia; while the fact that by this proceeding the relator seeks to overturn such decision and to attain the opposite result by the writ of this court smacks strongly of an appellate review. This, however, is not the precise attitude of the relator, and does not place his real contention in its proper light. The substantial basis of the relator's contention, as I understand it, has already been referred to in the general definition of *mandamus,* and is that, under the statutory provision.that is here involved, the justice of the Supreme Court is required to make the orders for which the relator applied as an act of unquestioning obedience to a specific statutory mandate without regard to whether or not the said justice officially determined that the ballots counted in his presence were not the votes that had been cast at the election.

In fine, the relator regards the function of such justice as being the precise equivalent of a statutory requirement that the filing with him of such a result of the recount should *ipso facto* constitute a cancellation of the old certificate and substitution of the new one.

This is a valid ground of contention involving a debatable question of statutory construction provided it be clearly recognized throughout that the correctness of the justice's determination as to the non-identity of the ballots is not open to question on this proceeding or subject to review. His right to make such determination at all is, of course, an open question—is in fact the question in the case. Assuming, therefore, as we logically must, a fact that cannot be questioned, the substantial inquiries are, first: Does the statute require the justice of the Supreme Court to revoke the old certificate and to issue the new one when there has been no recount of the votes cast at the election? And second: If the statute does not require or permit the justice to make such orders under such circumstances, has he any implied power to determine whether the circumstances are such that he is without authority to make such orders as the statute contemplates?

The second question clearly involves the entire merits since no one contends, or ever will, I suppose, that the legislature has, by this statute, authorized the revocation of a valid certificate of election and the substitution of another therefor where the ballots cast at such election have not been recounted. The stultification of the legislature, implied by such a contention, is its all-sufficient answer.

Plain as this is with respect to the paramount legislative purpose, it is scarcely less plain that the legislature cannot be deemed to have intended that no new certificate should be made when the votes had not been recounted, and, at the same time, have intended that no one should, under any circumstances, have the power to determine whether the legislative will in this respect was being effectuated or whether it was being frustrated and turned into an instrument of public fraud. To be consistent we must assume that if the legislature had the one intention, it also had the other which is thus essential to its effectuation. So, that the practical question is not so much whether such a power is to be implied as where, upon such implication, does it reside. For, in whomsoever this power resides, by him it is to be exercised and not by this court either originally or by means of its compulsory writ.

Upon a careful reading of section 159 of the Election law, as amended in 1909 (*Pamph. L., p.* 41), which is the only statute involved, it seems to us to be reasonably clear that, assuming the intention of the legislature to be as we have stated, the implied power necessary to render such intention effectual must reside in the justice of the Supreme Court as incidental to the acts that he alone is called upon to perform after his contingent connection with the county board of elections has entirely ceased. The recount of the votes cast at the election, which is ordered by such justice as a special legislative agent, is made by the county board of elections of which such justice is, by force of the statute, *pro hac vice* a contingent member, the contingency being the failure of the board to decide any disputed question by a majority vote. When this contingent relation to the board has come to an end with

the completion of its functions, the justice, as the agent selected by the legislature, is required, in the furtherance of the legislative purpose disclosed by the statute, to perform a series of final acts which will carry out such legislative purpose if a recount has been had, and will, on the contrary, frustrate such purpose and perpetrate a public fraud if a recount has not been had. We have, therefore, but little difficulty in reaching the conclusion that the legislation in question discloses not only an intention that the legislative purpose should be effectuated rather than that it should be frustrated, but also that the legislature, in placing the agent selected by it to effectuate its purpose in a position where his effectuation of such purpose or his frustration of it may depend upon a determination by him of a fact within his official observation has, by fair implication, clothed him, in such a juncture, with power to make such determination as an incident of the performance of the duty upon which the effectuation or the frustration of the legislative purpose would, as a practical matter, wholly depend. In this connection, it is proper to add that while the justice of the Supreme Court, when acting as such legislative agent, exerts none of the powers incident to his judicial office, but must derive his powers solely from the statutory scheme he is selected to direct and effectuate, still the mere fact of his selection by the legislature for such a purpose is not without its significance upon the question of the character of the duties the legislature intended such agent to perform.

We cannot, in the nature of things, be sure that the interpretation we thus place upon the legislative will is demonstrably correct; it certainly is permissible, and, upon this application for our prerogative writ, it seems to us to be the only view that at once comports with the intention that should be imputed to the legislature, and, at the same time, is consistent with the vital public interests that such legislation was intended honestly to subserve. Indeed, it is not essential that we should be sure that our construction of the legislative act is beyond all doubt correct; the relator, who is the moving party, bases his application for our writ upon the opposite

construction which to us seems, if not wholly untenable, to be at least of extremely doubtful soundness, and it may well be that such a doubt as to the soundness of the construction upon which the application rests ought to lead us to the same result as that reached by our adherence to the construction that we ourselves place upon the act in question.

We have given due regard throughout to the presumptions appropriate to the case, with the result that we hold such presumptions to be of a rebuttable character. Beyond this we do not need to go. To go further and determine whether or not they were in fact rebutted in the present instance, would be to turn this application into a species of review which cannot lawfully be done. The relator's application is technically defective, in that no preliminary demand upon the justice is shown to have been made; no point, however, is made of this defect which we have cured by treating the refusal of the justice as if made in response to such a demand by the relator.

The relator's application for the writ of *mandamus* is therefore denied upon the ground that the justice was not required to make the orders demanded unless the recount ordered by him had been made; that whether such recount had been made was a question that by the statute he was, under some circumstances, empowered to determine; that the circumstances of the present case, relied upon by him, were not improper ones for such a purpose, and that the propriety of his determination from such circumstances is not open to review upon this application or under the writ applied for; and further, that the refusal of the justice to make the orders constituted official action by him, and that the reversal of such action and the command that he make the specific orders demanded by the relator is not within the province of the writ of *mandamus*.