WEST JERSEY AND SEASHORE RAILROAD COMPANY, RELATOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT.

Submitted December 4, 1913—Decided February 21, 1914.

1. The writ of *mandamus* will not issue except where the act to be done is purely ministerial, and the legal obligation to perform it is clear.
2. The writ of *mandamus* will not issue to compel the board of public utility commissioners to approve a lease made by one railroad company to another, which, while adhering to the form of a lease, involves the powers to sell and mortgage the property of the lessor and to issue its capital stock and bonds from time to time in the future, but in nowise recognizes the necessity of obtaining the approval of the board with respect to the exercise of such powers.
3. It is within the power of the legislature by the Public Utility act (*Pamph. L.* 1911, *p.* 374) to attach to the exercise of privileges and powers granted by the legislature the condition that, in the exercise of such powers and privileges, the determination of the board of public utility commissioners that the limitations and restrictions to which such privileges and powers are subject have not been exceeded. shall first be had; and it is within the power, and is also the duty of such board to require that the instrument by which such privileges and powers are proposed to be exercised shall be so framed as to put it beyond reasonable doubt that such limitations and restrictions have not been exceeded.

On application for *mandamus.*

Before Justices GARRISON, TRENCHARD and MINTURN.

For the relator, *Alan H. Strong.*

For the respondent, *Frank H. Sommer.*

The opinion of the court was delivered by

TRENCHARD, J.  This is an application for a writ of *mandamus,* to be directed to the board of public utility commissioners requiring them to approve a lease proposed to be made

by the West Jersey and Seashore Railroad Company, a corporation of this state, to the Pennsylvania Railroad Company, a corporation of the State of Pennsylvania.

The proposed lease is dated March 18th, 1913, and demises all and singular the railroads and property of the lessor, situate in the State of New Jersey, "together with all sidings, extensions and branches thereof and therefrom now existing or that may hereafter at any time during the continuance of this lease be constructed or otherwise acquired as part of, or for use in connection with, the railroads hereinbefore mentioned, and all stations, depots, yards, buildings, wharves, structures, power houses, sub-stations, motive power, rolling and floating stock and equipment, appurtenances and property of whatsoever kind and wheresoever situate now owned by the said lessor, or which may hereafter at any time during the continuance of this lease be constructed or acquired, and which may be appurtenant to or for use in connection with the said railroads, and also all corporate rights, franchises and privileges of the said lessor necessary to be enjoyed and exercised by the said lessee for the proper maintenance, use, operation and management of the said railroads and property hereby demised, including the right to fix and establish from time to time, and to collect, receive and appropriate to the lessee's own use all tolls, rates and charges for the transportation of persons, property and mails not inconsistent with the requirement of such existing or hereafter enacted legislation, federal or state, as may be legally enforceable; also all revenues, rents and income from stocks, bonds or other investments, contracts, property, trackage rights or other grants, or from leases or privileges now made or existing, and from any extensions or renewals thereof, and from any and all other sources; provided always, however, that nothing herein contained shall operate as a grant or demise, or be construed to include the franchise to be a corporation possessed by the said lessor, or any other right, privilege or franchise which is or may be necessary to fully preserve the corporate existence or organization of the said lessor, and of the said franchise to be a corporation; and all the rights, privileges and franchises

requisite for the preservation of the corporate existence or organization of the lessor are hereby expressly reserved and excepted from these presents.  Also all the rights, privileges and interest by the said lessor under all contracts or other arrangements to operate or avail of trackage rights over any other lines of railroad, or rights covering the use of ferries, subject to all the terms and conditions pertaining to and governing in each case."

The proposed demise is for the term of nine hundred and ninety-nine years from and including July 1st, 1913.

Application was made to the board for approval of the proposed lease.

On July 19th, 1913, the board filed its report withholding its approval, and entered an order to that effect and dismissing the application.

We are of opinion that the application for *mandamus* must be denied.

The writ of *mandamus* will not issue except where the act to be done is purely ministerial, and the legal obligation to perform it is clear.  *Mooney* v. *Edwards*, 22 *Vroom* 479; *Hugg* v. *Ivins*, 30 *Id.* 139; *Mathis* v. *Voorhees*, 52 *Id.* 26.

In the circumstances of the present case, we think the function of the board in approving or disapproving of the lease was not simply ministerial, nor was the legal obligation to approve the lease clear.

It is conceded that the authority to make the lease is to be found in section 64 of the General Railroad act (3 *Comp. Stat., p.* 4248), which provides, among other things, as follows:

"Any railroad company of this state may *lease its road, or any part thereof, to any other railroad company of this or any other state, or may take a lease of the road, or any part thereof, of any other railroad company of this or any other state,* or may unite and consolidate as well as merge its stock, property, franchises and road with those of any other company or companies of this or any other state, or may do both, and after such lease or consolidation the company or companies so acquiring said stock, property, franchises and road

may use and operate said road and their own road, and collect fares and freights as provided in the case of companies organized under this act, but not in excess of the charges on the line of any of the consolidated companies, and shall not exceed the rates limited by any special act incorporating such company," &c.

Now, an examination of the lease in question seems to justify the following observations:

The proposed instrument, while adhering to the form of a lease, does not merely create a leasehold estate. It involves the exercise of the power of sale. By "article third" the lessor "agrees to assign, transfer and deliver to the lessee all the cash and other assets, excluding real estate, road and equipment, and the securities owned by the lessor," as shown by a general balance sheet statement of June 30th, 1913. By "article eighth" a right is conferred upon the lessee on any 30th day of June "to purchase the motive power, rolling and floating stock, shop tools and machinery" of the lessor. And by the same article it is provided that "such real and personal property of the lessor as shall not, in the opinion of the lessee, be necessary for the then present or prospective use of the lessor's railroads, or for the protection of the interests of the lessor therein, may, with the consent of the lessor (a majority of whose capital stock is owned by the lessee), and in accordance with the provisions of any mortgage or mortgages covering the same, be sold from time to time by the lessee."

The proposed instrument also involves an undertaking on the part of the lessor under "article sixth" to deliver to the lessee bonds or capital stock, or both, of the lessor, "as the lessee shall at the time elect and designate, in writing," in payment of improvements, betterments and additions, which shall be equal, at the par value thereof, to the cost of such improvements, betterments and additions. The article further provides that, when bonds are issued, they "shall be secured by mortgage upon the railroads, property and franchises of the lessor when required by the lessee."

Moreover, the proposed instrument, though it involves the powers to sell and mortgage property of the lessor, and to issue its capital stock and bonds from time to time in the future, in nowise recognizes the necessity of obtaining the approval of the board with respect to the exercise of such powers.

Now, the Public Utility act (*Pamph. L.* 1911, *p.* 374), by section 18 (*h*), provides that no public utility shall, "without the approval of the board, sell, lease, mortgage or otherwise dispose of or encumber its property, franchises, privileges or rights, or any part thereof," except a sale, lease or other disposition in the ordinary course of business; and by section 18 (*e*) provides that no public utility shall "hereafter issue any stocks, stock certificates, bonds or other evidence of indebtedness payable in more than one year from the date thereof until it shall have first obtained authority from the board for such proposed issue."

The foregoing considerations, among others, led the board to conclude that an unqualified approval of the proposed instrument would render the due administration of the Public Utility act impossible, or, at least, difficult, and hence it withheld its approval.

It will serve no useful purpose to examine into the other reasons assigned by the board for withholding its approval. Our recitation of the statutory authority upon which the proposed instrument in the form of a lease rests, and of a few of the provisions of the instrument, and of the powers and duties conferred upon the board by the Public Utility act, are entirely sufficient to show that the function of the board, with respect to the approval or disapproval of the lease, involved the decision of questions of law and fact, and was not purely ministerial, and that the legal obligation to approve the proposed instrument was not clear.

It is not necessary, nor wise, for us to determine on this application that our interpretation of the provisions of the proposed lease, and our application of the statute thereto, are demonstrably correct; they certainly are permissible.      To

obtain *this* writ the relator must show that the opposite view is clearly the correct one, and that it has not done.

The position taken by the relator is that the board is confined to determining whether the conditions under which the statute authorizes a lease exist, and whether the statutory procedure has, in all respects, been followed, and that, if the statute is construed to vest broader powers in the board, it delegates legislative power in violation of the constitution. This position is based upon the mistaken assumption that the proposed instrument involves the exercise of the power to lease alone. The Public Utility act does not delegate to the board the determination of whether the leasing of the road of one company to another shall be sanctioned, without prescribing a general rule by which such board should be governed in reaching its determination. On the contrary, the legislature, by the Public Utility act, has attached to the exercise of privileges and powers granted by it the condition that, in the exercise of such privileges and powers, the determination of the board that the limitations and restrictions to which such privileges and powers are subject have not been exceeded, shall be first had. That it may lawfully do. And it is not only within the power, but is also the duty of the board to require that the instrument by which such privileges and powers are proposed to be exercised shall be so framed as to put it beyond reasonable doubt that such limitations have not been exceeded.

Our conclusion that the *mandamus* applied for must be denied is not to be taken as a concession that *mandamus* is the proper and complete remedy to obtain the relief sought. The distinction between *mandamus* and *certiorari* should not be overlooked. *Mandamus* issues to compel, and *certiorari* to review, official or judicial action. The order of the board denying and dismissing the application is official action by it. *Mathis* v. *Voorhees,* 52 *Vroom* 26; *Newark* v. *Lewis, Commissioner,* 53 *Id.* 279; *affirmed,* 54 *Id.* 802. To grant the relator the relief sought without more, would be to compel the board to have outstanding two directly conflicting orders. In *Interstate Tel. & Tel. Co.* v. *Board of Public Utility Com-*

*missioners,* 55 *Id.* 184, *certiorari* was employed to review the order refusing the application for leave to issue bonds, and *mandamus* was applied for to compel approval of the issuance of the bonds. In *Leeds* v. *Atlantic City,* 23 *Id.* 332, an office was filled by *mandamus* after it had been vacated by *certiorari.* There is a place in our practice for a writ having this double function. Whether it can be worked out by allowing a rule to show cause for a *mandamus* with the *allocatur* of the *certiorari,* or by permitting the *certiorari* to be turned into a rule for *mandamus,* may well be considered in a proper case which, for the reasons stated, this is not.

But for the reasons indicated the application for the writ of *mandamus* will be denied, with costs.